J-S72044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRELL HART | : | |
| | : | No. 3779 EDA 2016 |
| Appellant | | |

Appeal from the PCRA Order November 18, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000461-2010

BEFORE:   BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:             **FILED DECEMBER 01, 2017**

Appellant Tyrell Hart appeals *pro se* from the order entered in the Court of Common Pleas of Philadelphia County dismissing, without an evidentiary hearing, his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After a careful review, we affirm.

The PCRA court has aptly set forth, in part, the facts and procedural history underlying this appeal as follows:

> [Following his arrest and the appointment of David Rudenstein, Esquire,] [o]n March 27, 2012, the day before trial, the [trial] court denied [Appellant's] request for a continuance in order to retain new counsel as he was not satisfied with. . .his appointed counsel.  The new counsel, Charles Peruto, Jr., had not entered his appearance and was not prepared to proceed to trial.  [Appellant] had only met with [Attorney] Peruto once before, at [Appellant's] preliminary hearing on January 12, 2010.  On March 27, 2012, [Attorney] Peruto met with [Appellant] at the [trial] court's request, to communicate the Commonwealth's plea offer

_____

*   Former Justice specially assigned to the Superior Court.

and explain to [Appellant] that he would not be representing [Appellant] at trial.

Later that day,. . .the brother-in-law of [Appellant] attempted to retain new counsel, Attorney Shaka Johnson. On the day of trial, March 28, 2012, the [trial] court permitted [Attorney] Johnson to discuss the Commonwealth's plea offer with [Appellant], but would not permit him to represent [Appellant] at trial because he was not prepared for trial. [Appellant rejected the plea offer, and a jury trial commenced with Attorney Rudenstein representing Appellant.]

At trial, the Commonwealth proved the following:

The victim, Selene Raynor ("Selene") was pregnant with [Appellant's] baby. On October 13, 2009, Danette Raynor ("Danette"), Selene's mother, overheard a telephone conversation between [Appellant] and Selene. Danette testified that in response to Selene telling [Appellant] she was going to keep the baby, [Appellant] got angry. The next day, Selene received a phone call from [Appellant], after which she borrowed her mother's vehicle and picked up [Appellant] at Twenty-Ninth and Montgomery Avenue in Philadelphia. They drove around for a while before Selene turned onto North Newkirk Street and parked the vehicle.

While in the parked vehicle, [Appellant] shot Selene in the head, killing her and the unborn child. Selene's body was found the next day inside her mother's vehicle at 1920 North Newkirk Street.

On October 15, 2009, [Appellant] was questioned by police. [Appellant] made two statements on October 16, 2009. In the first statement, he claimed the gun accidentally fired when he heard a loud noise that caused him to jump while he was playing with it. In the second statement, given to police approximately eight and one half hours later, [Appellant] admitted that he intentionally shot Selene because he was angry, scared, and frustrated over her being pregnant. He claimed that he aimed for Selene's shoulder. [Appellant] also admitted to police that the whole time he was in the car with Selene—about twenty minutes-he was thinking about shooting her. Both statements were admitted into evidence at trial.

Based on [Appellant's] statements, the police were able to locate the gun at the home of Shayonna Price ("Price"), the cousin of [Appellant's] best friend. A ballistics expert testified that the

gun [Appellant] used to shoot Selene required five pounds of pressure to be applied on the trigger in order for the gun to shoot. Therefore, according to the expert, the trigger had to be pulled to fire.

The medical evidence was that Selene had been shot in the head and that she had died from that wound and that her unborn baby had died as the result of Selene's death.

PCRA Court Opinion, filed 6/28/17, at 2-3.

Following the conclusion of testimony, the jury convicted Appellant of first-degree murder, third-degree murder of an unborn children, carrying a firearm without a license, and possessing an instrument of crime.[1] Appellant proceeded immediately to sentencing, and the trial court sentenced Appellant to an aggregate of life in prison without parole.

Appellant did not file post-sentence motions; however, he filed a timely, counseled direct appeal. On appeal, Appellant presented the issue of whether the trial court denied Appellant a fair trial. Specifically, he alleged his constitutional rights were violated when the trial court prevented him from being represented by the attorney of his choice by denying his request for a continuance in connection therewith. After a careful review, we found no merit to Appellant's claim.

Further, we noted that, on appeal, Appellant filed a motion to remand for an evidentiary hearing on the basis of after-discovered evidence, *i.e.*, a newspaper article, which stated that two homicide detectives involved in

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 2604(c), 6106, and 907, respectively.

Appellant's case had coerced confessions from other criminal defendants. Appellant attached to the motion his affidavit, in which he outlined alleged coercive tactics utilized by the detectives in his case. However, we found Appellant's after-discovered evidence claim to be waived due to Appellant's failure to cite any relevant authority, and we denied his claim without prejudice to his right to pursue the claim on collateral review. Accordingly, on March 21, 2014, we affirmed Appellant's judgment of sentence. **Commonwealth v. Hart**, No. 1231 EDA 2012 (Pa.Super. filed 3/21/14) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On July 3, 2014, Appellant filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel to represent him. Thereafter, on July 28, 2016, counsel filed a petition to withdraw his representation, as well as a **Turner/Finley**[2] "no-merit" letter. On October 7, 2016, the PCRA court provided Appellant with notice of its intent to dismiss Appellant's petition without an evidentiary hearing. On October 14, 2016, Appellant filed a *pro se* response to the notice, and on October 26, 2016, he filed a *pro se* response in opposition to counsel's **Turner/Finley** letter.

By order entered on November 18, 2016, the PCRA court granted counsel's petition to withdraw and dismissed Appellant's PCRA petition. This

---

[2] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

timely *pro se* appeal followed. The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the PCRA court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues:

1. Whether prior counsel were ineffective for failing to raise a meritorious Pa.R.Crim.P. 600 (speedy trial rule) motion to dismiss that deprived [Appellant] of his substantive Sixth (6th) and Fourteenth (14th) United States Constitutional Amendments and/or the Pennsylvania Constitutional right under Article 1, § 9 depriving a basic human right?

2. Whether [Appellant] was deprived of his substantive (Sixth) (6th) [Amendment] and Article 1, § 9 Pennsylvania Constitutional right to effective assistance of counsel on direct appeal proceedings for the unreasonable failure of counsel to submit relevant holdings on [after]-discovered evidence that would have merited a remand on direct appeal for an evidentiary hearing on a meritorious involuntary confession claim?

3. Whether Petitioner was denied his substantive Sixth (6th) [Amendment] and Article 1, § 9 Pennsylvania rights to effective assistance of counsel on direct appeal for the unreasonable failure of counsel to cite holdings that were directly-on-point to [Appellant's] denial of his substantive right to retained counsel of choice[?]

4. Whether [Appellant] was denied his substantive Sixth (6th) [Amendment] and/or Article 1, § 9 Pennsylvania Constitutional rights to effective assistance of [ ] trial counsel to follow-through on a requested mistrial due to prejudicial prosecutorial misconduct used to deprive [Appellant] of fair trial proceedings?

5. Whether [Appellant] was denied his substantive Sixth (6th) [Amendment] and Article 1, § 9 Pennsylvania Constitutional rights to effective assistance of counsel on direct appeal for the unreasonable failure of counsel to ensure the jury selection process was transcribed and/or for failing to even review such material transcripts?

6. Whether [Appellant's] initial review collateral petition raises genuine issues of material fact necessitating an evidentiary

hearing per Pa.R.Crim.P. 908(A)(2) to adjudicate [Appellant's] ineffective assistance of counsel claims?

Appellant's Brief at 4.

Initially, we note the following:

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a *de novo* standard.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016)

(quotation marks and quotations omitted).

Furthermore,

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.[A.] § 9543(a)(2)(i).

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa.Super. 2016)

(quotation marks, quotations, and citations omitted).

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the

applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Johnson*, 635 Pa. 665, 139 A.3d at 1272 (citations omitted).

Further, to the extent Appellant presents layered claims of ineffectiveness, we note that:

[l]ayered claims of ineffectiveness are not wholly distinct from the underlying claims because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the [appellant] asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa.Super. 2012) (quotation marks and quotations omitted).

In his first issue, Appellant contends trial and direct appeal counsel were ineffective in failing to raise a claim that Appellant's case should have been dismissed since he was not brought to trial until twenty-nine months after he was arrested in violation of his speedy trial rights under Pa.R.Crim.P. 600. The PCRA court found no merit to Appellant's underlying Rule 600 claim, and thus, the court held Appellant's attorneys could not be ineffective. We agree.

When considering Rule 600 issues:

this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not

designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Thompson*, 93 A.3d 478, 486 (Pa.Super. 2014) (quotation omitted).

Rule 600 provides in pertinent part:[3]

### Rule 600. Prompt Trial

\*\*\*

(A)(2) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.

(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\*\*\*

(B) For purposes of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

\*\*\*

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

---

[3] We note that Rule 600 was amended on October 1, 2012, effective July 1, 2013. However, Appellant was brought to trial in March of 2012, and thus, we shall analyze Appellant's claim under the version of Rule 600 that was in effect at that time.

\*\*\*

(E) No defendant shall be held in pre-trial incarceration on a given case for a period exceeding 180 days excluding time described in paragraph (C) above. Any defendant held in excess of 180 days is entitled upon petition to immediate release on nominal bail.

\*\*\*

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600 (footnote added).

While "Rule 600 requires the Commonwealth to try a defendant within 365 days of the filing of a criminal complaint[,]. . .[a] defendant. . .is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint." *Commonwealth v. Roles*, 116 A.3d 122, 125–26 (Pa.Super. 2015). "Rather, Rule 600 'provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time.'" *Id.* at 126 (quotation omitted). "The adjusted run date is calculated by adding to the mechanical run date, *i.e.*, the date 365 days from the complaint, both excludable and excusable delay." *Id.*

"Excludable time includes delay caused by the defendant or his lawyer[,] [whereas] excusable delay occurs where the delay is caused by 'circumstances beyond the Commonwealth's control and despite its due diligence.'" *Id.* (quotation omitted). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.* (quoting *Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa.Super. 2013)). Further, "judicial delay is a justifiable basis for an extension of time if the Commonwealth is ready to proceed." *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa.Super. 2004) (*en banc*) (quotation marks and quotation omitted).

Here, in finding no merit to Appellant's underlying Rule 600 claim, the PCRA court relevantly indicated the following:

> In the instant case, 188 days of the delay were excludable: 35 days due to [Appellant] not having an attorney, and 153 days due to defense requests for continuances. In addition, 540 excusable days were due to the difficulty, by the court, in scheduling a capital case for trial. [For instance, on September 20, 2010, the trial court listed the case for trial on March 26, 2012, ruling all but twelve days, which was attributed to the Commonwealth's request not to schedule trial during the weeks of Christmas and New Year's Day, was excusable.] When all excludable and excusable time is considered, [Appellant] was brought to trial 165 days after his arrest. Thus, the case was tried within the time allotted by Rule 600.

PCRA Court Opinion, filed 6/28/17, at 8.

We agree with the PCRA court's analysis in this regard and, further, agree that trial counsel cannot be deemed ineffective in failing to raise a

- 10 -

meritless claim.[4] *See Johnson*, *supra*. In this vein, we note that we reject Appellant's suggestion that his defense counsel's requests for continuances do not constitute "excludable time" for Rule 600 purposes. Rule 600 clearly holds otherwise. *See* Pa.R.Crim.P. 600(C)(3).

In his next issue, Appellant contends his direct appeal counsel was ineffective in failing to submit relevant holdings/authority regarding his after-discovered evidence claim (*i.e.*, a November 5, 2013, article from *The Philadelphia Daily News* indicating two homicide detectives had coerced confessions from other criminal defendants). Appellant argues that, had counsel adequately developed the claim on appeal, this Court would not have found waiver on direct appeal and, additionally, would have remanded for an evidentiary hearing or provided some other relief.

Our Supreme Court has held that, to prevail on a claim of appellate counsel ineffectiveness with regard to the manner in which a claim was litigated on direct appeal, "the PCRA petitioner must show exactly how appellate counsel was ineffective, by offering additional evidence or controlling authority, missed by direct appeal counsel, that would have changed the appeal outcome[.]" *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 142 (2012) (quotation marks and quotation omitted).

Further:

---

[4] Further, direct appeal counsel cannot be deemed ineffective in this regard. *See Rykard*, *supra*.

- 11 -

To warrant a new trial based on after-discovered evidence, the appellant must show that the evidence "(1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." *Commonwealth v. Castro*, 625 Pa. 582, 588, 93 A.3d 818, 821 (2014) (quoting *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008)).

\*\*\*

We acknowledge that in *Castro*, our Supreme Court held that allegations in a newspaper article "do not constitute evidence" and thus, were not sufficient to support a motion for an evidentiary hearing or a new trial. The Supreme Court specifically stated:

> [a]llegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation. Nothing in these allegations even read in the broadest sense, can be described as "evidence," and references to the officer being under investigation for misconduct contains no information regarding what evidence existed to substantiate this averment. One cannot glean from these bald allegations what evidence of misconduct [the] appellee intended to produce at the hearing.

*Castro*, 625 Pa. at 595, 93 A.3d at 825. As "an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim," the Supreme Court concluded that Castro "needed to do more than present an article pointing to allegations that if true have the potential to aid his cause; he needed to clearly articulate in his motion what evidence he would present to meet the test." *Id.* at 598–99, 93 A.3d at 828.

*Commonwealth v. Brown*, 134 A.3d 1097, 1108-09 (Pa.Super. 2016).

In the case *sub* judice, notwithstanding the fact direct appeal counsel may have been derelict in failing to develop the motion properly on direct

- 12 -

appeal with citation to relevant authority so as to avoid waiver, we conclude Appellant is not entitled to relief.

Under **Castro**, the newspaper article Appellant attached to his petition is not "evidence." Further, as the PCRA court held:

> [Appellant] references. . .a newspaper article accusing Detective James Pitts and Detective Omar Jenkins of coercing statements from witnesses in other cases. [Appellant] [did not allege in the trial court] that the statement he gave to detectives was coerced. Indeed, had [Appellant's] statement been coerced, that fact would have been known to him and could have been raised during the trial.

PCRA Court Opinion, filed 6/28/17, at 9.

Therefore, at most, Appellant could have utilized the newspaper article to attack the credibility of witnesses who testified that Appellant's confession was voluntary. Accordingly, even if the item identified by Appellant comprised relevant evidence, it would not meet the four-prong admissibility test provided in **Castro** as an appellant seeking a new trial must demonstrate that he will not use the alleged after-discovered evidence "solely to impeach a witness's credibility." **Castro**, 625 Pa. 582, 93 A.2d at 821 n.7. Accordingly, Appellant is not entitled to relief on his allegation of ineffective assistance of appellate counsel in connection with his after-discovered evidence claim.

In his next issue, Appellant contends that appellate counsel was ineffective in failing to cite legal precedent that would have persuaded this Court on direct appeal that the trial court abused its discretion in denying Appellant's request for a continuance so that he could be represented by the

attorney of his choice during the jury trial proceedings. In essence, Appellant contends that appellate counsel was ineffective in the manner in which he litigated the issue on direct appeal. We conclude no relief is due.

Appellant claims that, in developing the argument on appeal, direct appeal counsel should have cited to **Commonwealth v. Prysock**, 972 A.2d 539 (Pa.Super. 2009), since such was directly on point and factually indistinguishable from his case. Appellant is correct that, in **Prysock**, a panel of this Court held that the trial court abused its discretion in denying an appellant's request for a continuance in order to secure new counsel. However, Appellant is mistaken in his assertion that **Prysock** is indistinguishable from the case *sub judice*.

In concluding the trial court erred in denying the appellant's request for a continuance in **Prysock**, a panel of this Court held the following:

> Here, the record does not establish that any of the factors which we rely on in ascertaining whether the swift administration of justice would be vitiated by granting the continuance were present. Although the underlying criminal activity in this matter occurred in December 2006, [the] appellant was not charged until May 2007, and counsel was not appointed until some time after June 28, 2007, less than thirty days prior to the scheduled trial date of August 8, 2007. While the trial court and the Commonwealth argue that this trial date was continued, at least in part, so that [the] appellant could retain private counsel, there is nothing in the record which substantiates this claim[.]
>
> There is also no indication in the record that [the] appellant was ever personally warned that he needed to retain counsel by a specific date or that no further continuances would be granted after the trial was initially continued. Also, the record demonstrates that [the] appellant was incarcerated in a state correctional facility at all times since December 2006, making it difficult for him to retain counsel in Allegheny County; however,

- 14 -

his family did obtain counsel to represent him, who attempted to enter his appearance on November 2, 2007. Thus, it was apparent that [the] appellant was not attempting to unreasonably delay the trial proceedings by claiming that he was going to retain private counsel when he had no means or intention of doing so.

Further, the trial court relied on a single factor in making its decision not to grant the requested continuances, the fact of the prior continuance on August 8, 2007. The record reflects that the trial court failed to make any inquiry whatsoever into the nature of the dispute between [the] appellant and appointed counsel, and thus failed to make the type of detailed factual findings that we have previously commended and in their absence have found an abuse of discretion.

*Prysock*, 972 A.2d at 544-45 (footnotes, citations, quotation marks, and quotation omitted).

By contrast, in the case *sub judice*, in concluding the trial court did not err in denying Appellant's request for a continuance, a panel of this Court held the following on direct appeal:

Instantly, the parties appeared for trial on March 27, 2012. At that time, Attorney Rudenstein orally requested a continuance, stating Appellant wanted more time to retain Attorney Peruto as trial counsel. The court asked Attorney Rudenstein if he was prepared to start trial, and Attorney Rudenstein answered affirmatively. The court also conducted an on-the-record teleconference with Attorney Peruto. During the teleconference, the following exchange occurred:

[ATTORNEY PERUTO]: I am not fully retained. I have not entered my appearance. I did call the Assistant District Attorney last week to see if there was any shot at a third degree plea at all in this case, and I don't think we touched base after that.

[THE COMMONWEALTH]: That's true.

[ATTORNEY PERUTO]: There is a—

THE COURT: Mr. Peruto, you either have to be in or out. Now, if you're not in, then Mr. Rudenstein is going to proceed to try the case today. It's listed

- 15 -

> today, and I can't continue the case just because you might at some point in the future represent [Appellant]. You have to tell me whether you're in or out.
>
> [ATTORNEY PERUTO]: I agree with you, and I am not in.

***Commonwealth v. Hart***, 1231 EDA 2012, *6-7 (Pa.Super. filed 3/21/14) (unpublished memorandum) (footnote and citation to record omitted).

Moreover, this Court noted that Attorney Rudenstein participated in jury selection on March 27, 2012; however, when the proceedings commenced on March 28, 2012, the trial court acknowledged that another attorney, Attorney Johnson, was present at the behest of Appellant's family. ***See id.*** at 8. However, Attorney Johnson had not accepted any payment from the family, had not formally entered an appearance, had not met with Appellant, and was not prepared for trial. ***See id.*** The trial court provided a one-hour recess so that Attorney Johnson could speak with Attorney Rudenstein and Appellant in order to permit further discussion regarding the plea offer; however, upon expiration of the one-hour recess, and with Appellant's continued insistence he wanted to be tried by a jury, the trial court denied Appellant's request for a continuance. This Court concluded on appeal that the trial court properly denied Appellant's eleventh-hour request for a continuance since the request served to "unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." ***See id.*** at 10 (quotation marks and quotation omitted).

- 16 -

Based on the aforementioned, we conclude **Prysock** is distinguishable from the case *sub judice*, and thus, appellate counsel would not have succeeded on appeal with the citation and discussion thereof. Accordingly, appellate counsel was not ineffective in failing to cite to this authority in support of Appellant's issue on direct appeal. **See Koehler**, 614 Pa. 159, 363 A.3d at 142 ("To succeed on a stand-alone claim of appellate counsel's ineffectiveness, a PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal.").

In his next issue, Appellant contends trial counsel was ineffective in failing to request a mistrial in response to prosecutorial misconduct occurring during the prosecutor's closing argument to the jury. We conclude no relief is due.

In support of his argument, Appellant cites to the following portion of the prosecutor's closing argument:

> [Appellant] acted as her judge, her jury, and her executioner and a self-proclaimed abortionist of that baby, because he shot her in the head, the baby died, too.

N.T., 3/30/12, at 52.

Our review of the certified record reveals that trial counsel immediately objected to the prosecutor's statement; however, the trial court overruled the objection. **Id.** at 53. Moreover, and contrary to Appellant's mistaken assertion, trial counsel specifically requested a mistrial due to the prosecutor's statement. **Id.** at 82. The trial court denied the request for a mistrial, but

indicated it planned to give a curative instruction. *Id.* at 82-84. Thereafter, the trial court gave the following curative instruction:

> [D]uring her closing argument, the District Attorney mentioned the word "abortion." This case is not about abortion. That was inappropriate. This case is about the murder of an unborn child, not abortion. So you will please disregard that.

*Id.* at 88.

As is evident, there is no merit to Appellant's claim that trial counsel failed to request a mistrial.[5] Therefore, counsel cannot be deemed ineffective on this basis.

In his next issue, Appellant contends direct appeal counsel was ineffective in ensuring that the transcript related to jury selection was transcribed and reviewed by him prior to the filing of a direct appeal on Appellant's behalf.

As the PCRA court concluded "[Appellant] has not advanced any claim or provided any reasons as to why the notes would be required." PCRA Court Opinion, filed 6/28/17, at 11. In essence, the PCRA court concluded Appellant failed to demonstrate how he was prejudiced by direct appeal counsel's omission. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 977

---

[5] To the extent Appellant contends trial counsel was ineffective in failing to object to the cautionary instruction, we note that, aside from asserting the trial court's curative instruction did not remove the alleged "taint" from the prosecutor's statement, Appellant has not developed the argument further.

(1987) (holding a defendant raising claims of ineffective assistance of counsel is required to show actual prejudice — that is, that counsel's conduct "had an adverse effect on the outcome of the proceedings"). We agree and conclude Appellant is not entitled to relief.[6] ***Johnson***, ***supra***.

In his final issue, Appellant contends the PCRA court erred in dismissing his petition without an evidentiary hearing.

"A PCRA petitioner is not entitled to an evidentiary hearing as a matter of right, but only where the petition presents genuine issues of material fact. A PCRA court's decision denying a claim without a hearing may only be reversed upon a finding of an abuse of discretion." ***Commonwealth v. Walker***, 613 Pa. 601, 36 A.3d 1, 17 (2011) (citation omitted).

In the case *sub judice*, the PCRA court indicated it did not hold an evidentiary hearing since there were no genuine issues of material fact in controversy. ***See*** PCRA Court Opinion, filed 6/28/17, at 11-12. We find no abuse of discretion. ***See Walker***, ***supra***.

For all of the foregoing reasons, we affirm the PCRA court's dismissal of Appellant's first PCRA petition.

Affirmed.

---

[6] Appellant further asserts PCRA counsel was ineffective in arguing in his "no-merit" letter that there was no merit to this contention. To the extent Appellant preserved this issue below, we conclude he is not otherwise entitled to relief. ***See Rykard***, ***supra***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/1/2017</u>